**Opinion filed July 12, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00200-CR

_____

## DANIEL PAUL RAY, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 77th District Court**

**Limestone County, Texas**

**Trial Court Cause No. 11721-A**

## M E M O R A N D U M   O P I N I O N

Appellant, Daniel Paul Ray, complains that the trial court abused its discretion when it revoked his community supervision and sentenced him to ten years confinement. In addition, he complains that, in its judgment, the trial court incorrectly recited that he pleaded "true" to the alleged violations. We modify and affirm.

*Facts*

In 2009, Appellant pleaded guilty to failure to comply with sex offender registration requirements by failing to register with the City of Groesbeck Police. TEX. CODE CRIM. PROC.

ANN. art. 62.102(a) (West 2006). Pursuant to a plea agreement, the trial court convicted Appellant, assessed his punishment at ten years imprisonment and a $500 fine, suspended the imposition of the sentence, and placed him on community supervision for five years. Four months later, on June 10, 2009, the State filed a motion to revoke Appellant's community supervision.

The State alleged in its motion that appellant:

> 1. Committed a violation of law by intentionally or knowingly making an offensive gesture or display, to-wit: by masturbating in a public place which tended to incite an immediate breach of the peace;

> 2. Committed a violation of law by intentionally or knowingly causing a physical contact with another when he knew or should have reasonably believed that the other would regard the contact as offensive or provocative "by bumping her from behind with an erection"; and

> 3. through 10. Failed to pay any of the eight separate financial obligations imposed by the terms of his community supervision.

After Appellant was arrested on a capias, he was found to be incompetent to stand trial and was committed to the Austin State Hospital for 120 days. He was later found competent, and the parties proceeded to a hearing on the revocation motion. When Appellant entered his plea, it was not in the standard format of "true," "not true," or "nolo contendere." Rather, the trial court, Appellant, and Appellant's counsel entered into a dialogue. The trial court read each of the ten allegations that the State listed in the motion. Appellant admitted only to parts of the first two allegations, and as for the rest, he responded, "No, ma'am." At times, Appellant's attorney explained his client's answers to the trial court. The trial court did not demand that Appellant's plea be clarified as true, not true, or no contest.

Melissa Arney testified about the first allegation in the State's motion. Arney testified that Appellant came into her family's furniture store on May 16, 2009, and asked to look at mattresses. The furniture store was comprised of three separate buildings, and the mattresses were located in the building furthest from the storefront. While she was alone with him in this isolated section of the store, he began asking her questions and moving toward her. She backed away repeatedly, but each time that she did so, he continued to move toward her. She estimated that he got within two feet of her person. She testified that "he had his hands in his pants, which were sweatpants, he had a full erection, which was very visible, and had his hand -- in his pants

2

and was moving toward me." When asked whether Appellant was merely adjusting himself, Arney replied, "He was touching himself, not in a forward and backward motion, but touching himself and, like I say, it was very apparent that he had an erection." In her opinion, he was intentionally "messing with himself" and "was deriving some type of pleasure" from his conduct. Arney was able to maneuver around Appellant and get out of the building. Appellant continued to follow Arney, but remained in the middle of the store's three buildings while Arney continued on to the front building. Another customer was present at the front of the building. Arney was afraid and asked the other customer to stay in the store until she could call someone to come to the store. Arney testified that she felt threatened, scared for her safety, and violated by Appellant's actions; she was offended by his conduct. She called her father and told him that she needed him to come to the store. When she returned to where she had left Appellant in the middle building, he left. She believes he left the store because he knew that she felt threatened.

Jennifer Watson[1] testified about the second allegation in the motion to revoke. On June 7, 2009, Watson walked outside her home and found Appellant leaving her porch. He said that he had knocked but that no one answered. Watson replied that she was in the back and did not hear the knock. At this point, Watson assumed that Appellant was there for her son because she did not know him. Watson began doing her gardening, under the assumption that Appellant "would eventually tell [her] what he wanted." Appellant sat down on the porch but still said nothing. Watson went back inside her home to wake up her son to see if Appellant was someone he knew. Appellant was acting "fidgety" and "strange"; Watson thought that he might have been disabled and might have been someone that her son knew from school. After speaking to her son, Watson went back outside and told Appellant that her son said he did not know him.

Appellant told Watson that he was there to see if she needed any yard work done. Watson showed him a dog pen in her backyard that needed mowing. As she was showing him the work that needed to be done, he "bumped into [her] hind end" with his "groin area." At first, Watson thought maybe it was she who had bumped him so she just moved away and continued her explanation of the work to be done. Then, Appellant bumped into her again. Watson turned around to see why they were so close again, and it was then that she saw that he had an erection.

---

[1]We note that this complainant's name was Jennifer Watson at the time of trial but that her name had previously been Jennifer Samuels, which was the name alleged in the motion to revoke.

Watson worked at the state school and was familiar with mental disability. She thought that Appellant was mentally disabled. She was not sure whether mental disability was impairing Appellant's ability to control his actions. However, she nonetheless found the conduct offensive. She was not sure if she should report the conduct; she was uncomfortable reporting it because she thought Appellant may have been disabled and could not help himself. However, after speaking to a constable and finding Appellant's name on a sex offender registry website, Watson eventually reported the conduct. Watson was embarrassed about the incident, and she felt that Appellant's behavior was of a sexual nature.

Dr. Frederick Willoughby, a psychologist, testified about Appellant's mental condition and IQ. Dr. Willoughby met with Appellant in 2009 as part of Appellant's probation requirement to complete a sex offender treatment program. Appellant was diagnosed with frotteurism, a psychological disorder that causes a person to rub against another for sexual gratification. It was Dr. Willoughby's opinion that Appellant needed a highly structured treatment program if he was to remain on community supervision. The resources required to provide such a program were not available in Limestone County.

Appellant's community supervision officer, Billy Powell, testified about Appellant's violations of the financial terms of his supervision. According to Powell, Appellant had not met, or even made any payments toward, the financial obligations of his community supervision. Powell also testified that Appellant did not have a job beyond the yard work that he could occasionally find around town. Appellant estimated that his annual income from yard work was between $500 and $1,000. Appellant was incarcerated for all but the first four months of his community supervision.

The judgment reflects that Appellant entered a plea of true to the allegations in the motion. Whether this is an accurate reflection is one of the issues raised on appeal. In any event, the trial court found all ten allegations against Appellant to be true, revoked his community supervision, and sentenced him to ten years imprisonment. Appellant timely filed his notice of appeal.

*Issue One*

In his first issue, Appellant argues that the judgment incorrectly recites that he pleaded "true" to the alleged violations of his community supervision. He asks this court to modify the judgment. We may modify the trial court's judgment even though Appellant failed to object to it

4

in the trial court because the entry of a proper judgment is a sua sponte duty of the trial court. TEX. R. APP. P. 43.2(b); *see Garner v. State*, 214 S.W.3d 705, 706–07 (Tex. App.—Waco 2007, no pet.). The Texas Code of Criminal Procedure provides that, upon verdict, "the proper judgment shall be entered immediately." TEX. CODE CRIM. PROC. ANN. art. 37.12 (West 2006). The judgment "shall reflect: . . . [t]he plea or pleas of the defendant to the offense charged." TEX. CODE CRIM. PROC. ANN. art. 42.01, § 1(3) (West Supp. 2011). Because a trial court has a sua sponte duty to sign and enter a proper judgment, this type of complaint is not subject to ordinary rules for procedural default. *See Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004) ("A law that puts a duty on the trial court to act sua sponte, creates a right that is waivable only.").

The State urges that the proper procedure for remedying an error in the judgment is a motion for judgment nunc pro tunc in the trial court. This method may be preferable for correcting clerical errors, but it is not available when the error is judicial. *See State v. Bates*, 889 S.W.2d 306, 309 (Tex. Crim. App. 1994) ("nunc pro tunc orders may be used only to correct clerical errors in which no judicial reasoning contributed to their entry"). Appellant's answers to the trial court were not given in the standard format of "true" or "not true." The characterization of the plea as "true" may have been arrived at by interpreting and weighing all of Appellant's answers to each of the ten allegations. It is not clear from the record that the error was merely clerical. Thus, we will decide the issue.

Here, the oral pronouncements in open court conflict with the written judgment. Appellant denied almost every part of every allegation that the trial court read to him. As to allegation one, he replied, "True in part." His attorney clarified that Appellant admitted only to being at the furniture store on the date in question and to touching himself. He denied the part of the allegation that he was masturbating and disturbing the peace. As to allegation two, he admitted only that he caused physical contact with another person. He did not admit to intentionally bumping Watson from behind with an erection. As to the remaining eight allegations regarding the financial violations of his supervision, Appellant simply replied, "No, ma'am." The State concedes that these last responses do not constitute a pleading of "true." Though there were several factual stipulations, overall the record does not reflect that Appellant pleaded true to the allegations. Issue One is sustained, and we order that the written judgment in this case be modified to reflect that Appellant pleaded "not true" to the allegations.

5

*Issue Two*

In his second issue, Appellant contends that the State failed to meet its burden to prove that he committed disorderly conduct. TEX. PENAL CODE ANN. § 42.01 (West Supp. 2011). We review an order revoking community supervision under an abuse of discretion standard. *Cantu v. State*, 339 S.W.3d 688, 691 (Tex. App.—Fort Worth 2011, no pet.) (citing *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006)). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated the terms and conditions of community supervision. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). The State meets its burden when the greater weight of the credible evidence creates a reasonable belief that the defendant violated a condition of his community supervision. *Rickels*, 202 S.W.3d at 764. The trial court is the sole judge of the credibility of the witnesses and of the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking the community supervision. *Id.* at 493–94. Proof by a preponderance of the evidence of any one of the alleged violations of the conditions of community supervision is sufficient to support a revocation order. *Cantu*, 339 S.W.3d at 691–92 (citing *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980); *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980)).

The State alleged that Appellant committed the offense of disorderly conduct by making an offensive gesture or display in a public place that tended to incite an immediate breach of the peace. TEX. PENAL CODE ANN. § 42.01(a)(2) (West Supp. 2011). Appellant argues that the State failed to prove that his conduct tended to incite an immediate breach of the peace because there was no actual or threatened violence. *See Coggin v. State*, 123 S.W.3d 82, 92 (Tex. App.—Austin 2003, pet. ref'd) (citing *Woods v. State*, 213 S.W.2d 685, 687 (Tex. Crim. App. 1948)) (actual or threatened violence is an essential element of a breach of the peace). We do not find it necessary to decide whether actual or threatened violence is always required in order to find that there has been a breach of the peace. There was sufficient evidence here of the threat of violence. We find that, by cornering a woman in an isolated building, violating her personal space, and continuing to do so multiple times after she attempted to move away, all while fondling his obviously erect penis, Appellant threatened violence. Appellant's behavior toward Arney, especially given the circumstance that she was alone in an isolated area, cannot be

6

perceived as anything but an immediate threat to her person. Arney testified that she felt threatened, scared for her safety, and violated by the incident. In addition to threatening violence to Arney, Appellant's conduct was also capable of inciting a reasonable person to a violent response. Arney took the calculated risk of maneuvering around Appellant and escaping; another reasonable response would have been to go on the offensive and attack him physically. Arney testified that, had her father or husband been present, they would have physically assaulted Appellant. There was no evidence to contradict Arney's version of events. The State proved by a preponderance of the evidence that Appellant committed the offense of disorderly conduct. Because the State had only to prove a single violation of the terms of the community supervision, the trial court did not abuse its discretion in revoking Appellant's community supervision. Thus, it is unnecessary for us to reach Appellant's third and fourth issues. Appellant's second issue is overruled.

The trial court's judgment, as modified to show pleas of "not true," is affirmed.


ERIC KALENAK
JUSTICE


July 12, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

7